# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| BRITESTARR HOMES, INC., | : Bankruptcy Case No. 02-50811 (AHWS) |
| | : |
| Debtor. | : December 21, 2004 |

## OAK POINT PROPERTY, INC.'S RESPONSE TO NEW YORK CITY'S MOTION TO EXPUNGE CLAIM AND REVOKE CONFIRMATION

Oak Point Property ("OPP"), by and through its attorneys, Coan, Lewendon, Gulliver & Miltenberger, LLC, hereby responds to the City of New York's (the "City") Motion for Orders (i) Expunging Claim #12 of Oak Point Property, L.L.C. and Any Amendment Thereto, and (ii) Revoking Confirmation of the Debtor's Plan Pursuant to 11 U.S.C. § 1144 for Fraud (the "Motion"). In support of its objection, OPP states as follows:

1. The City's motion is filed for an improper purpose. The relief sought by the Motion can benefit the city in no legitimate way. Instead, the Motion is retribution for the Debtor's commencement of an adversary proceeding against the City, and is merely a part of the City's attempts to acquire an ownership interest in the Debtor's real property at the expense of every creditor of this case.

2. The Plan of Reorganization in this case provides the City with two possible treatments. First, the plan allows for payment to the City pursuant to an agreement between the City and the Debtor. Alternatively, the plan provides for the payment of the City's claim over six years at the rate of 18% interest. This alternative was proposed by the City and agreed to by the Debtor.

1

3. The plan of reorganization gives the City the treatment to which it is entitled as a matter of law pursuant to 11 U.S.C. § 1129(a)(9)(C).

4. Despite receiving a treatment equal to the maximum required by law, the City objects to the claims in junior classes, and seeks the revocation of the plan of reorganization on the grounds of fraud. The relief requested by the City *cannot* enhance its distribution, or its treatment.

5. Accordingly, the City's Motion is properly viewed as what it is – retaliation for the Debtor's temerity in commencing an action to challenge the City's inflated proof of claim, and part of the City's continuing effort to extort a portion of the Debtor's real property for use as a jail site. Regardless of the City's motivation, its motion is baseless and must be denied.

### The Claim of Oak Point Property

6. The City alleges that the claim of OPP is based on a time barred debt.

7. A defense predicated on the statute of limitations may be waived by agreement, an acknowledgment of the debt, and through other contact. *See generally Friedman v. Wheat First Securities, Inc.*, F. Supp. 2d. 338, 345 (S.D.N.Y. 1999).

8. A creditor's filing of document which indicates the basis for a claim against the estate and the , primarily creditor's intent to hold estate liable may constitute "informal proof of claim," which the creditor may be able to amend by formal proof of claim, even after claims bar date has passed. *In re Dove House, Inc.*, 233 B.R. 230, 232 (Bankr.D.Conn. 1999).

9. There is little question that the documentation provided by OPP to the Debtor and this Court have sufficed as an informal proof of claim. Furthermore, there is no question that the Second

2

Amended Disclosure Statement and the Second Amended plan of Reorganization put all creditors on notice of the claim of OPP and its amount.

10. More importantly, however, under the terms of the Second Amended Plan of Reorganization, the claim of OPP will receive no distribution from the bankruptcy estate. OPP holds a Class 3 claim. Under the terms of the Second Amended Plan of Reorganization, "The Holders of Allowed Unsecured Claims in Class 3 will waive any distribution from the Bankruptcy Estate in exchange for contingent payments from the Successor and its affiliates in an amount no greater than the amount of each such Class 3 claim." *Second Amended Plan of Reorganization*, at paragraph 5.3.

11. As a result, whether or the OPP claim is allowed as an unsecured Class 3 claim (formal or informal) has no impact on the bankruptcy estate or its creditors.

12. The City's motion seeks to have the Debtor and others litigate the allowance of a claim that currently will receive nothing from the bankruptcy estate. Such litigation constitutes a worthless waste of resources for all concerned – the parties and this Court.

13. If OPP claims or becomes entitled to a distribution from the bankruptcy estate in the future, then litigation over the OPP claim might have a purpose. Currently, such litigation is pointless.

**There Is No Basis to Revoke Confirmation**

14. The City claims that "Smith is using estate assets for personal gain." The statement is false. Mr. Steven Smith has provided services and money for the benefit of the estate and its property. OPP is prepared to provide this Court with evidence showing that Mr. Smith has spent

3

significant sums of money for the benefit of the bankruptcy estate, and that he worked (and continues to work) on a full time basis to enhance the value of the assets of the bankruptcy estate and the reorganized Debtor. Mr. Smith has worked for the benefit of the bankruptcy estate and the reorganized Debtor for more than two years, and he has neither sought nor received any compensation from the bankruptcy estate for the services he has provided.

### The Class 3 Claims

15. The City argues that Mr. Smith failed to object to certain proofs of claim because of a purported conflict of interest. Not only is the argument false, but it is completely backwards.

16. The City argues that Mr. Smith failed to instruct Britestarr to object to the claim of Jeffrey Buss ("Buss").

17. Mr. Smith convinced Mr. Buss to waive his distribution from the bankruptcy estate. As Buss receives nothing from the estate, an objection to his claim would have constituted, at a minimum, an egregious waste of bankruptcy estate assets through the incursion of unnecessary administrative expenses.

18. Similarly, the City argues that Mr. Smith failed to have Britestarr object to the claim of ABB.

19. Like OPP and Buss, ABB receives nothing from the estate. An objection to its claim would have constituted an egregious waste of bankruptcy estate assets through the incursion of unnecessary administrative expenses. Furthermore, and surprisingly, the City notes an agreement

4

between an OPP affiliate and ABB in which OPP's affiliate receives a reduction of its debt to ABB if ABB recovers from the Britestarr bankruptcy estate.

20. However, the Debtor, under the direction of Mr. Smith, confirmed a plan through which ABB waives its claim against the bankruptcy estate. This means that OPP's affiliate will receive no reduction of its debt to ABB. Instead of Britestarr paying a portion of said sum, ABB's waiver requires OPP's affiliate to pay the entire amount.[1]

21. Accordingly, Mr. Smith has placed the interest of Britestarr's bankruptcy estate and creditors *above* those of OPP. The City even writes, "the Debtor's president has a direct financial incentive . . . to actively seek its [ABB's proof of claim] allowance and payment." *Motion*, at paragraph 15. Despite this incentive, Mr. Smith had ABB waive any distribution from the bankruptcy estate. Mr. Smith has not used estate assets for personal gain. He has acted for the benefit of the estate at all times.

### Voting

22. The City argues that it would have voted differently had it known the information it now knows prior to the confirmation of the Second Amended Plan of Reorganization.

---

[1] The City also complains that Britestarr should have accepted the option agreement with ABB. Doing so might or might not have eliminated ABB's claim for damages, but it would have provided ABB with an unspecified time to investigate the Debtor's real estate for very little, if any, compensation. Britestarr was correct in not giving any party an indefinite "free look" at the assets of the estate. This is especially true in light of the fact that the party with the potential option is receiving nothing from the bankruptcy estate.

23. The City does not state why it would have voted differently. As mentioned earlier, the Second Amended Plan of Reorganization provides the City with the most it can receive under 11 U.S.C. § 1129(a)(9)(C). In fact, the treatment found in the Second Amended Plan of Reorganization is the treatment requested by the City.

24. The City also speculates that the State of New York might have voted differently, because it might have controlled the class of unsecured creditors – a fact "concealed" by the Debtor. However, the State of New York was classified in a separate class (because its claim is, at least in part, non-dischargeable), that it controlled regardless of the value of any other claim against the bankruptcy estate.

## Value

25. The City argues that the Debtor listed the value real estate in its Second Amended Disclosure Statement differently than it values it in an objection to the City's claim.

26. To the best of OPP's knowledge, the value of the Debtor's real property as stated in the Second Amended Disclosure Statement was made according to the best information available at that time.

27. The valuation methodologies for 11 U.S.C. §§ 502, 505, and 506 differ in terms of the applicable standard for valuation, the date of the valuation, the purpose of the valuation. The bankruptcy code does not set forth any bright line method to conduct valuation hearings. *In re Melgar Enterprises, Inc.*, 151 B.R. 34, 39 (Bankr.E.D.N.Y. 1993). A bankruptcy court does not

conduct valuation hearings without a specific purpose for doing so. *See e.g. In re Richardson*, 97 B.R. 161 (Bankr.W.D.N.Y. 1989).

28. The valuations in the Second Amended Disclosure Statement were designed to assist creditors in determining, primarily, the distribution each creditor might receive if the Debtor's assets were liquidated. Thus, the information is based on the best information available to the Debtor about how the case was likely to proceed in the future, specifically in the event that the Debtor's bankruptcy case was converted to a Chapter 7.

29. Upon information and belief, the Debtor's objection to the City's proof of claim refers to the value of the Debtor's property on the date of the bankruptcy petition, and in the absence of the favorable events related to the Debtor's real property after the petition date. As the purposes, the date of valuation, and the methodology for conducting the valuations differ, the results of those valuations also differ.

## Conclusion

30. The City was provided adequate information to make an informed decision about the Second Amended Plan. The City actively participated in the reorganization process. The City has failed to provide a single instance in which Mr. Smith did not protect the assets of Britestarr, and ignored the fact that Mr. Smith accepted burdens he may not have been legally obligated to accept.

7

32. The City has used the reorganization process in an attempt to obtain title to Britestarr's assets on the basis of an inflated claim and to the detriment of all of Britestarr's creditors and the equity in Britestarr. This Court should reject the City's efforts.

WHEREFORE, Oak Point Property objects to the City of New York's Motion for Orders (i) Expunging Claim #12 of Oak Point Property, L.L.C. and Any Amendment Thereto, and (ii) Revoking Confirmation of the Debtor's Plan Pursuant to 11 U.S.C. § 1144 for Fraud.

OAK POINT PROPERTY

By _____
Timothy D. Miltenberger (ct08874)
Coan, Lewendon, Gulliver & Miltenberger, LLC
495 Orange St.
New Haven, CT 06511
(203) 624-4756
(203) 865-3673 Facsimile
Tmiltenberger@coanlewendon.com

## CERTIFICATION OF SERVICE

This certifies that a copy of the foregoing was mailed, via first class mail, postage prepaid, this 22nd day of December, 2004, to the following:

Hugh H. Shull, Esq.
Corporation Counsel,
 City of New York
100 Church Street, Room 5-233
New York, NY 10007
(Counsel to NYC)

Melissa Neier, Esq.
Ivey, Barnum & O'Mara
170 Mason Street
P.O. Box 1689
Greenwich, CT 06836
(Counsel to the Debtor)

Michael A. Caddell, Esq.
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010
(Counsel to the Debtor)

_____
Timothy D. Miltenberger