UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| BRITESTARR HOMES, INC., | : | CASE NO.: 02-50811 (AHWS) |
| | : | |
| Debtor. | : | |
| | : | |

**BRITESTARR'S RESPONSE TO PIPER RUDNICK, LLP'S OBJECTION TO THE FEE APPLICATIONS OF GEOFFREY HAZARD, KLEE TUCHIN AND THE BRATTLE GROUP**

Piper Rudnick, LLP's ("Piper") objection to the interim fee applications (the "Fee Applications") of Geoffrey Hazard ("Professor Hazard"), Kenneth Klee ("Professor Klee") and The Brattle Group, all of whom were well qualified to serve as expert witnesses for Britestarr Homes, Inc. (the "Debtor" or "Britestarr") in its adversary proceeding against Piper, captioned *Britestarr Homes, Inc. v. Piper Rudnick, LLP*, docket number 03-05072 (the "Adversary Proceeding") is meritless and should be overruled. The Debtor has focused this response on the Klee Tuchin Fee Application (the "Klee Fee Application"), which is set for hearing tomorrow, Tuesday, July 18th, but the arguments contained herein are also applicable to and support the fee applications of Professor Hazard and The Brattle Group.

**A.    This Court Approved Professor Klee's Retention Without Objection From Any Creditor.**

In August 2004, the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "Court") approved the Debtor's retention of Professor Klee to serve as the bankruptcy expert in the Debtor's malpractice action against Piper. As detailed in his *curriculum vitae,* attached to his retention application filed with this Court on June 15, 2004, Professor Klee regularly lectures

and writes upon bankruptcy issues, teaches numerous bankruptcy courses at the U.C.L.A. Law School and as such is well-qualified to analyze the bankruptcy advice Piper provided to Britestarr and the issues surrounding Piper's handling of the Britestarr bankruptcy filing. Moreover, the retention application of Professor Klee was properly noticed and served. No creditors, including Piper, objected and by an order of this Court, docketed August 12, 2004, Professor Klee's retention to provide his services on an hourly basis was approved.

**B.    Professor Klee Is Among the Nation's Most Respected Bankruptcy Scholars.**

Professor Klee, of the Klee Tuchin firm and the U.C.L.A. Law School, is arguably the nation's pre-eminent bankruptcy scholar. Piper itself has recently twice retained Professor Klee, once as its own expert in defending against another malpractice case, and once as the sole arbitrator for its client's complex commercial arbitration against another party. As a result, Piper has first hand knowledge of the valuable services Professor Klee provides.

**C.    Professor Klee Provided Valuable Services to the Debtor.**

Professor Klee was retained by Britestarr to opine regarding the applicable standard of care owed by an attorney to his or her client, to analyze whether Piper breached that standard of care, and to explain the results and consequences of Piper's breach through a formal written expert report and testimony. Professor Klee provided the Debtor with an extremely valuable work product. The Klee Fee Application seeks reasonable compensation for those services in accordance with the order of this Court Approving his retention.

D.  **The UST Has Filed its Statement of No Objection to the
Klee Fee Application and No Other Creditor Has Objected.**

On or about June 20, 2006, the UST filed its statement of no objection[1] to the Klee Fee Application and no other creditor has objected. Notably, Piper does not dispute that Professor Klee performed the services that support the Klee Fee Application nor do they argue that the fees sought to be charged are unreasonable. Therefore, the Klee Fee Application should be approved (as should the fee applications for Professor Hazard and The Brattle Group).

Contrary to Piper's assertion, the Court need not defer approval of the Klee Fee Application until the United States District Court for the District of Connecticut (the "District Court") issues an opinion on Piper's pending motion for summary judgment in the Adversary Proceeding. The Klee Fee Application, as well as the fee applications of Professor Hazard and The Brattle Group, should be approved now because the experts are deserving of compensation regardless of the District Court's ruling. Moreover, the Klee Fee Application is interim in nature, which by definition leaves a final determination of such fees to be decided at the end of the Debtor's bankruptcy case.

E.  **Rejecting or Delaying Approval of the Klee Fee Application
Will Have a Chilling Effect Upon a Debtor's Ability to Retain Professionals
and Will Also Establish An Arrangement That Arguably Is Unethical.**

Piper's sole basis for objecting to the Fee Applications is that two months ago the District Court announced its intention to grant Piper's motion for summary judgment. To date, no decision has been issued. Therefore, Piper argues, Britestarr received no value for the valuable work of Professor Klee, Professor Hazard, and Dr. Lynda Borucki of The Brattle Group. This is nonsense, as is

---

[1] On or about July 5, 2006, the UST also filed his statement of no objection in regards to the fee application for The Brattle Group. With regard to the fee application for Professor Hazard, at the request of UST the Debtor has provided additional documentation in support of his application at the request of the UST.

3

explained further below. More importantly, adopting Piper's view will frustrate the efforts of future debtors to retain professionals, and creates an ethical dilemma.

Piper's view in essence is that a professional or, as in this case, an expert witness who agrees to work with a debtor in pursuing causes of action may not be compensated unless the pursuit of those causes of action results in a disposition favorable to the Debtor. Thus, professionals would essentially be forced to work on a contingency basis. This creates at least two problems. If the fee applications of prominent professionals such as Professor Klee are subject not only to bankruptcy court approval but also to the risk of the success or failure of the underlying litigation, those professionals will undoubtedly hesitate to represent debtors given that receiving compensation for the work will have become exponentially riskier.

Even putting aside the threshold problem that most professionals are not willing to work on a contingency basis, Piper's approach would also present an ethical dilemma for experts retained by a debtor for an adversary proceeding. An expert is not permitted to work on a contingency basis because such an arrangement is generally viewed as unethical. *See* DR 7-109(c) of the ABA MODEL CODE OF PROF. RESP. (lawyer cannot compensate witness contingent on testimony). Additionally, a contingency arrangement would severely undermine the expert's credibility before a jury. Accordingly, Piper's view that professionals should not be compensated unless the case is successful must be rejected.

Piper's objection is frivolous and is asserted purely for tactical reasons. No one, including Piper, seriously contests the fact that the Klee Fee Application accurately characterizes and supports the work that Professor Klee was retained to do. The Klee Fee Application should therefore be approved.

**F.   Piper Has Resumed Attempting to Frustrate Its Former Client's Bankruptcy.**

Since Piper was removed as Britestarr's counsel in 2002, Piper has taken every opportunity to frustrate its former client's efforts to reorganize and pursue any malpractice case against it. When Piper was removed, Piper actually objected to Britestarr's efforts to retain new counsel, and refused to turn over Britestarr's documents to its new counsel. Further, Britestarr instructed Piper not to object to the transfer of Britestarr's bankruptcy case from New York to this Court, but, remarkably, Piper ignored those instructions and objected anyway. Piper sought to get a Chapter 11 trustee appointed to liquidate its former client's prized asset, Britestarr's Bronx property that is the only power-plant site left in New York City. Although Piper had another power client who was interested in purchasing the Bronx property, Piper refused to identify that potential purchaser to Britestarr. Finally, Piper objected to Britestarr's efforts to retain special counsel to pursue the Adversary Proceeding. In continuing to frustrate Britestarr's efforts at a successful reorganization, Piper has filed the instant objection to harass Britestarr for its efforts in pursuing a malpractice action against Piper.

Piper now seeks to alienate Britestarr from its experts. If Britestarr cannot obtain approval to compensate its experts, then Britestarr will no longer have experts. Britestarr needs experts because the Adversary Proceeding is ongoing. Although the District Court has stated its intention to grant summary judgment, two months have passed and no ruling has been issued. Moreover, the District Court could ultimately decide not to grant Piper's pending motion for summary judgment or grant only partial summary judgment, in which case Britestarr must have experts. Even if the District Court ultimately does grant summary judgment, Britestarr will appeal that ruling to the Second Circuit. For all of these reasons, the Adversary Proceeding is not over. Britestarr must maintain its

experts until the Adversary Proceeding is finally resolved. Piper's objection to the Fee Applications is obviously a pretext that Piper is using in an attempt to improperly eliminate Britestarr's experts in the Adversary Proceeding.

### G. Piper Attempts to Mislead the Court.

Lastly, Piper contends that the District Court has rejected "any of the grounds on which Hazard and Klee testified in the adversary proceeding." *See* Piper's Objection at 2. The District Court did no such thing in its one-paragraph notice. The District Court simply stated that it intends to grant summary judgment. The District Court did not offer even a hint as to the basis for its ruling. *See* Exhibit "A" to Piper's Objection, the District Court's Notice to Parties dated May 19, 2006. It is entirely improper for Piper to claim that the District Court rejected the grounds on which Professors Hazard and Klee testified. Whether Professor Klee is correct that Piper's bankruptcy advice fell below the standard of care and whether Professor Hazard is correct that Piper mishandled Britestarr's escrow account were not even at issue in Piper's motion for summary judgment because Piper did not contest those breaches.

### CONCLUSION

The Debtor respectfully submits that this Court should approve the Klee Fee Application, and the fee applications for Professor Hazard and The Brattle Group. The Debtor further respectfully submits that this Court should reject Piper's argument and further reject its assertion that consideration of the Fee Applications be deferred pending the District Court's ruling. As explained above, this Court's approval of the Fee Applications is not dependent upon the District Court's ruling. Professor Klee was properly retained without objection and he is entitled to the payment of reasonable compensation for his services.

Dated at Greenwich, Connecticut this 17th day of July, 2006.

Respectfully submitted,

Britestarr Homes, Inc.


By: /s/ Melissa Zelen Neier
Melissa Zelen Neier
Fed. Bar No.: ct 25055
Ivey, Barnum & O'Mara, LLC
Greenwich, CT   06830
Phone: (203) 661-6000
Fax: (203) 661-9462
E-mail: mneier@ibolaw.com

Michael A. Caddell
Cynthia B. Chapman
Gregory K. Evans
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX  77010-3027
Phone: (713) 751-0400
Fax: (713) 751-0906
E-mail: mac@caddellchapman.com
E-mail: cbc@caddellchapman.com
E-mail: gke@caddellchapman.com